IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:10-cr-00069 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| TIMOTHY WESLEY BARBOUR ) | United States District Judge |

**MEMORANDUM OPINION**

Before the court is Timothy Wesley Barbour's motion for compassionate release. (Dkt. No. 64.) The court appointed the Federal Public Defender to represent Barbour and to file a supplement to Barbour's motion. (Dkt. Nos. 65, 66.) The FPD filed a supplement (Dkt. No. 67), the government responded (Dkt. No. 72), and Barbour filed a pro se reply in further support of the motion (Dkt. No. 73).[1]

For the reasons stated below, Barbour's motion will be granted, and his sentence will be reduced to time served.

I. BACKGROUND

On May 31, 2011, Barbour pled guilty to one count of attempting to possess with intent to distribute more than 500 grams of cocaine hydrochloride. (Dkt. No. 31.) (Presentence Investigation Report (PSR) ¶¶ 1–2, Dkt. No. 37.) Based on his criminal history, drug weight, and receiving full credit for acceptance of responsibility, Barbour's guideline range was 188 to 235 months. (PSR ¶ 43.) However, because his plea agreement was a Rule 11(c)(1)(C) plea agreement, Barbour was sentenced to the agreed-upon sentence of 100 months, followed by a

---

[1] Barbour also filed two pro se motions to provide supplemental authorities in support of his motion. (Dkt. Nos. 74, 75.) The court will grant these motions and consider the supplemental authorities provided by Barbour.

four-year term of supervised release. (Dkt. No. 35.) According to the BOP's website, Barbour's current release date is January 17, 2025.

On October 7, 2019, Barbour filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 38.) Barbour brought three claims, one of which was that he should get credit for time served on his state sentences. The court dismissed the motion as untimely. (Dkt. No. 44.) The court noted, though, that Barbour might be able to obtain relief on his claim for state-court sentence credit by exhausting administrative remedies before the Bureau of Prisons and then seeking relief pursuant to 28 U.S.C. § 2241 (*id.* at 5–6).

On November 23, 2020, Barbour filed a motion for reduction of sentence, seeking relief pursuant to 18 U.S.C. § 3582(c)(2) and United States Sentencing Guideline (U.S.S.G.) Amendment 782. (Dkt. No. 59.) In this motion, he argued that he should not have been considered a career offender because that provision only applies in the case of someone being sentenced for committing a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a). His offense of conviction, however, was an attempt crime, which he argued no longer qualified as a controlled substance offense under the career offender guideline, although it did qualify previously. He also argued that his two prior offenses for controlled offenses were not proper predicate offenses for the career offender enhancement because, although the charges were brought years apart, the conduct underlying them occurred on the same date. He thus argued that they should have been treated as a single conviction rather than two separate convictions. Barbour also argued that Amendment 782's revision of the drug quantity table meant his base offense level should have been 24 instead of 26. (*See generally* Dkt. No. 59.)

In denying that motion, the court noted a circuit split on the issue of whether Barbour should have been considered a career offender, with the Fourth Circuit yet to address the issue.

Ultimately, the court found that it lacked jurisdiction because Barbour was not sentenced based on a sentencing range "subsequently lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); (Mem. Op. 6, Dkt. No. 68.) This was because his offense level was not determined by the drug quantity guideline, but by the career offender guideline. (Mem. Op. 6, Dkt. No. 68.)

On June 16, 2020, Barbour filed an "emergency" motion for relief pursuant to the First Step Act, (Dkt. No. 48), which the court denied on July 22, 2020. (Mem. Op. & Order, Dkt. No. 58.) The court noted that Barbour had failed to show that extraordinary and compelling reasons warranted his release at that time. (*Id.* at 5–6.) The court further reasoned that its consideration of the 18 U.S.C. § 3553(a) sentencing factors weighed against any reduction in his sentence. (*Id.* at 6.)

Finally, the court denied a previous motion for compassionate release filed by Barbour that was based upon COVID-19 and his health issues. (Mem. Op. & Order, Dkt. No. 58 (denying Dkt. No. 48).) The court found that Barbour did not establish extraordinary circumstances which would justify compassionate release, and even if he did, the factors set forth in 18 U.S.C. § 3553(a) did not favor a sentencing reduction. (Dkt. No. 58.)

Barbour's present motion is based on his career offender designation at sentencing and on the BOP's failure to give him credit for his state court sentence, both issues he raised in previous motions, but those motions were different procedural vehicles. The government argues that Barbour's claims are habeas claims that cannot be addressed via a compassionate release motion. Even if the claims were cognizable, the government argues that they do not present extraordinary and compelling reasons for Barbour's release, and the § 3553(a) factors weigh against his release.

II. ANALYSIS

**A. Compassionate Release Under the First Step Act**

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(1) provides a statutory vehicle to modify a defendant's sentence under circumstances. As amended by the First Step Act and in pertinent part,[2] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir.

---

[2] Prior to the First Step Act of 2018, only the Bureau of Prison could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

4

2020)).³ Therefore, at this time, a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* Finally, if a court finds an extraordinary and compelling reasons for release, it must also consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

**B. Exhaustion**

While the First Step Act changed § 3582(c)(1)(A) to allow a prisoner to bring a motion on his own behalf, the statute includes an exhaustion requirement. But § 3582's exhaustion requirement is not a jurisdictional bar; it is a claims-processing rule that may be waived. *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Here, the warden did not respond to Barbour's administrative request for release within 30 days of receipt (*see* Dkt. No. 64 at 9), and the government does not contest that Barbour has exhausted his administrative rights within the Bureau of Prisons. (Gov't Resp. 5, Dkt. No. 72.) Therefore, the exhaustion requirement does not stand in the way of granting relief to Barbour.

**C. Extraordinary and Compelling Circumstances Based on Career Offender Change**

As noted, the government argues that the claims advanced by Barbour in this motion are not cognizable in a compassionate release motion. In the alternative, the government contends that Barbour's claims do not meet the standard for extraordinary circumstances which would

---

³ As recently recognized by Judge Lauck of the Eastern District of Virginia, the Commission has submitted its 2023 Amendments to the Guidelines. Those proposed amendments currently are subject to Congress' 180-day review period and will only become effective on November 1, 2023, if Congress does not take action to the contrary. *See United States v. Rives*, No. 3:13cr175, 2023 WL 4976192, at *7–*8 (E.D. Va. Aug. 3, 2023) (explaining process and describing the proposed amendments), appeal docketed, No. 23-6787 (4th Cir. Aug. 14, 2023). The proposed amendments describe certain medial circumstances and family circumstances that would constitute extraordinary and compelling reasons for release. *See id.* at *8.

justify a sentencing reduction. Since the filing of the government's response, though, there have been changes in the law, as discussed herein. Most notably, the Fourth Circuit's decision in *United States v. Campbell*, 22 F. 4th 438, 443 (4th Cir. 2022), means that if he were sentenced today, Barbour would no longer be a career offender.[4] The court concludes that Barbour's request for relief based on such changes can be brought in a motion for "compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i).

The court also concludes that Barbour can show compelling and extraordinary circumstances. As the *McCoy* court explained, a "gross disparity" between a defendant's sentence at the time of conviction and the sentence that would be imposed under current law can be considered an "extraordinary and compelling reason" for granting compassionate release. *McCoy*, 981 F.3d at 285–86; *see also United States v. Gutierrez*, No. 21-7092, 2023 WL 245001, at *2 n.1 (4th Cir. Jan. 18, 2023) (reiterating holding in *McCoy*). And Barbour correctly notes that, after *Campbell*, he would no longer be deemed a career offender if sentenced today, as he was at his original sentencing.

> Under U.S.S.G. §4B1.1, a defendant is designated a career offender if
>
>> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The term "controlled substance offense" is further defined in U.S.S.G. § 4B1.2(b).

In *Campbell*, the Fourth Circuit concluded that an offense of attempt to possess a controlled substance with the intent to distribute is not a "controlled substance offense" within

---

[4] Likewise, the Federal Public Defender filed a supplement to the Barbour's *pro se* motion as directed by the court, which also was filed before the decision in *Campbell*. As a result, the counseled filings have not discussed *Campbell*.

6

the meaning of § 4B1.2. 22 F. 4th at 443. Barbour's offense of conviction was an attempt conviction, which would no longer by a "controlled substance offense." Thus, under current law, Barbour is not a career offender.

Without the career offender designation, and if he were being sentenced today, Barbour's base offense level would be 24. This takes into account Amendment 782 to the Guidelines, which reduced his base offense level based on drug quantity by two levels. With acceptance of responsibility, his total offense level would be 21, and his criminal history category would be a V, not a VI.[5] (PSR ¶ 31.) This would result in a guideline range of 70 to 87 months. U.S.S.G. Ch. 5 Pt. A. This is significantly lower than his guideline range as it was determined to be at his original sentencing: 188 to 235 months. There is almost a ten year difference (118 months) between the low end of the guideline ranges, and more than a twelve-year difference (144 months) between the two high ends.

Other courts have recognized that such a change in sentencing exposure can constitute a sufficiently "compelling and extraordinary" circumstance to support a compassionate release request. *See, e.g.*, *United States v. Williams*, No. 14-cr-428, 2021 WL 582737, at *5–*7 (E.D. Va. Dec. 8, 2021) ("[D]efendants who, following *Norman*,[6] no longer qualify as 'career offenders' may suffer from the kind of sentencing disparity that the compassionate release statute was intended to capture . . . ."). *See also Naylor v. United States*, No. 7:14-cr-00026,

---

[5] The court recognizes that Barbour also has argued—in the context of arguing that he does not have two predicate convictions for controlled substance offenses—that two of his prior convictions should not have counted as separate convictions because the second group of charges occurred as a result of a search warrant executed at his home, the day after he was arrested on the first charge. (*See* PSR ¶¶ 27, 28 (describing charges and conduct underlying offenses).) He cites to no authority to suggest that they should have been counted separately, and the Sentencing Guidelines say otherwise. U.S.S.G. § 4A1.2 (a)(2). The two charges were brought years apart, and he was sentenced for them on different days.

[6] *United States v. Norman*, 935 F.3d 232 (4th Cir. 2013), preceded the decision in *Campbell*. In it, the Fourth Circuit held that convictions for conspiracies to distribute illegal drugs are no longer considered controlled substance offenses under U.S.S.G. § 4B1.2.

7

2021 WL 4162280, at * 4 (W.D. Va. June 23, 2023) (citing to a number of cases in which courts have granted compassionate release motions based on the claim that "the defendant received what would be an invalid career offender designation under *Norman* if sentenced today"). The court agrees with these cases and finds compelling and extraordinary circumstances based on the significant difference in sentencing exposure.

The court notes that, in reaching this conclusion, it also has considered the impact of Barbour's guilty plea pursuant to Rule 11(c)(1)(C). His plea agreement called for a binding sentence of 100 months, the sentence the court imposed. The plea and that agreed-upon sentence represented a substantial benefit to him based on the sentencing range he faced at the time. Indeed, as part of the agreement, the government agreed not to file an enhancement pursuant to 21 U.S.C. § 851. (PSR ¶ 44.) Moreover, had he not pled guilty his guideline range would have been 262 to 327 months. (*Id.*) And, even with acceptance of responsibility, his actual guideline range was 188 to 235 months. His agreed-upon sentence, then, was not as harsh as it could have been, given his guideline ranges. But the potential sentencing *exposure*, and the guidelines that were before the parties and the court, was very different then and now.

D. § 3553(a) Sentencing Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant § 3553(a) sentencing factors include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense. to afford adequate deterrence to criminal conduct, to protect the

public from further crimes of the defendant, and to avoid unwarranted sentence disparities. The court also considers the types of sentences available and the sentencing range. The court considers these factors holistically, and no one factor is dispositive. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021).

Additionally, while Congress has dictated that rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification, 28 U.S.C. § 994(t), the Fourth Circuit has explained that rehabilitation efforts must be considered as part of the court's determination of whether a sentence reduction is warranted. *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019).

The court's previous analysis of these factors, in its July 2020 opinion, was as follows:

> Barbour asserts that he "had impeccable conduct prior to conviction of his instant offense," and has a low risk of recidivism. However, his Presentence Investigation Report (PSR) indicates that he has been convicted five times on drug-related charges, including possession with intent to distribute marijuana and methamphetamine. (PSR 6–8, Dkt. No. 37.) And despite his statements to the contrary, Barbour's inmate records indicate that as recently as November 5, 2019, he was considered at high risk of recidivism. (Dkt. No. 53-2.) Within the last year, the prison also sanctioned Barbour for drinking alcohol. (Dkt. No. 52-2.)
>
> Given the nature and circumstances of Barbour's offense and Barbour's criminal history, high risk of recidivism, continued substance abuse, and failure to follow the rules governing his incarceration, the court finds that his current sentence is sufficient but not greater than necessary to promote respect for the law, provide punishment for . . . his offense, protect the public from further crimes, and provide Barbour with needed treatment and rehabilitation. Furthermore, in accepting Barbour's plea agreement, the court varied downward from the United States Sentencing Guidelines advisory range. Thus, leaving Barbour's sentence intact best avoids unwarranted sentence disparities among defendants with similar records who were found guilty of similar conduct.

(Dkt. No. 58 at 6.)

More than three years have passed since the court reached those conclusions. In his present motion, Barbour again advances various rehabilitation efforts he has completed while incarcerated, including educational programs, drug treatment, and substance abuse counseling. (Dkt. Nos. 74, 75.) These include certificates showing that he earned a "Career Readiness Certificate at the Gold Level" in March 2023, and he completed a non-residential drug abuse program in May 2023. (Dkt. No. 75-3.) He also states that he has "financial, emotional, and employment support, and [a] stable home plan." (Dkt. No. 74 at 3.) In his most recent filing, he further notes that he was originally to be assigned to a halfway house in August 2023, for a period of 17 months, but when that house was closed, he was instead told he would be transferred to a halfway house in August 2024, for a period of 5 months. (Dkt. No. 75 at 3.) Notably, moreover, and showing significant improvement from the time the court last evaluated the § 3553(a) factors, as noted above, a May 2023 assessment from the BOP listed his risk of recidivism as low, and his risk of violence as low. (Dkt. No. 75-2, at 2.)

Although the court has some concerns about his disciplinary record while in prison and his continued involvement with illegal drugs while incarcerated, the record also reflects that he has made great strides in his efforts toward rehabilitation. Overall, the court believes his rehabilitation favors a reduction in his sentence.

The court further concludes that a consideration of all of § 3553(a) factors together, moreover, support a reduction in sentence. First of all, the nature and circumstances of Barbour's offense are fairly neutral, although the lack of violence involved somewhat supports a reduction. He negotiated a significant drug transaction in which he arranged with an undercover officer to trade marijuana (and additional cash) to purchase two kilograms of cocaine hydrochloride. (PSR ¶¶ 3–6.) He ultimately was held responsible (and pursuant to a stipulation)

for more than 500 but less than 2,000 grams of cocaine hydrochloride. (*Id.* ¶ 7.) The court also notes that the facts of one of his prior convictions (stemming from conduct in 2007) stated that a firearm was found at his home near various types of drugs. (*Id.* ¶ 4.). Notably, though, no firearm was involved in this offense, and he has no history of violence and no reported history of brandishing or using a firearm, in conjunction with the offense of conviction or otherwise.

Barbour's background and characteristic are mixed. As noted, he has no history of violent crimes reflected in the PSR. Barbour was arrested for what would lead to his first adult conviction for possession of marijuana when he was eighteen years old. He continued to have convictions for possessions of marijuana up until age 26, when he was first arrested for possession with intent to distribute. During that time, he had a number of convictions for possessing or distributing illegal drugs, but it appears that at least some of this conduct likely was driven by his own addictions. As noted in the PSR, his substance abuse began at the age of 15, with increasing use of different illegal substances over time. His relative youth throughout these offenses, and even at the time of this offense, also suggests a greater possibility of rehabilitation.

In considering the types of sentences available, the court notes the existence of Barbour's Rule 11(c)(1)(C) plea agreement, which the court has considered carefully in making its decision. As the Fourth Circuit has noted—and in this very context—judicial restraint counsels against disturbing the careful negotiations of the parties "in reaching their Rule 11(c)(1)(C) plea agreement." *United States v. Bond*, 56 F.4th 381, 384 (4th Cir. 2023) (affirming the denial of a § 3582 motion, where part of the district court's reasoning was that modifying the sentence would "disturb the parties' carefully negotiated agreement"); *see also United States v. Bullock*, No. 4:11-CR-00416-TLW, 2023 WL 3344416, at *7 (D.S.C. May 10, 2023) (denying

11

compassionate release motion where defendant was no longer a career offender but had received the bargained-for sentence from a Rule 11(c)(1)(C) plea agreement).

But here, the difference in the guideline ranges then, versus now, means that if Barbour and the government were negotiating today, it would be within a very different framework. *See, e.g., United States v. Jimenez*, No. 5:09-CR-00032-MFU-1, 2023 WL 3309878, at *8 (W.D. Va. May 8, 2023) (granting motion to reduce sentence despite Rule 11(c)(1)(C) plea and noting that if the defendant were sentenced today, the "plea negotiations would occur in a greatly modified framework" in terms of the sentencing guidelines in effect). Indeed, the court believes it very unlikely that Barbour would today agree to a plea for 100 months, which is 13 months *above* the top of the now-applicable guideline range. This is especially so when considering that, at the time of his conviction, he was offered a binding plea for a sentence that was 88 months *below* the bottom of the applicable guideline range at the time. Thus, while the existence of the binding plea causes the court to consider carefully whether he should receive a reduced sentence, the great disparity in the guideline ranges convinces the court that at least some reduction is warranted.

The court also concludes that a sentence of time served, which will release Barbour approximately 17 months before his current release date, and around the same time he states that he was originally scheduled to be in a halfway house, is an appropriate sentence. Such a sentence also aligns—although not perfectly—with the top end of the guideline range that would be applicable if he were sentenced today—87 months. Especially given his lack of any history of violence and his significant rehabilitation efforts, the court concludes that a sentence of time served is sufficient, but not greater than necessary, to reflect the seriousness of the offense,

promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct, both to Barbour and to others.

Also significant in this case is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. As Barbour notes, allowing his 100-month sentence to stand would mean that he will have received a sentence 13 months above his applicable guideline range, as compared to persons with similar criminal histories and guideline ranges. A reduction in sentence diminishes that result.

For all of these reasons, the court finds that reducing Barbour's sentence to time served is appropriate.

### III.  CONCLUSION

For the reasons stated above, Barbour's motions to provide supplemental authorities (Dkt. Nos. 74, 75) will be granted, and Barbour's motion for compassionate release (Dkt. No. 64) will be granted. His sentence of imprisonment will be reduced to time served. The court will allow a brief stay of the effective date of its order to ensure an orderly release from custody. An appropriate order will be entered.

Entered: August 23, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge